F. M. Weyl et al., Plaintiffs in Error, v. Southern Pacific Company, Defendant in Error.

### Gen. No. 15,189.

COMMON CARRIERS—*when liability terminates.* A complete delivery of merchandise by the carrier to the consignee terminates the former's liability. A complete delivery takes place if the car containing the merchandise is placed by the carrier upon the usual and customary

place where the consignee received consignments of freight in cars. Notice of delivery by the carrier to the consignee is not essential to the termination of its liability. Nor does the closing of the place of business of the consignee operate to continue the liability of the carrier for delivery made in accordance with instructions given.

Error to Municipal Court of Chicago; the Hon. STEPHEN A. FOSTER, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed July 14, 1910.

CHARLES A. BUTLER, for plaintiffs in error.

JOHN MAYNARD HARLAN and OLIVER B. WYMAN, for defendant in error; LEWIS W. McCANDLESS, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Plaintiffs prosecute this writ of error in an effort to reverse a judgment of *nil capiat* and for costs against them, rendered upon a verdict directed by the trial judge.

Defendant is a common carrier in the State of California, and plaintiffs are engaged in business at Los Angeles in that state. No part of the controversy here involved took place within the domain of this Commonwealth. Plaintiffs, however, have submitted their disputes to the arbitrament of the forum in this jurisdiction. The right so to do has been conceded by the decision in Simpson Fruit Co. v. The Atchison, Topeka & Santa Fe Railway Co., 245 Ill. 596.

Defendant undertook to convey for plaintiffs a carload of potatoes from Irwindale in California to Los Angeles to be delivered at Los Angeles to plaintiffs. In the rear of plaintiffs' place of business at Los Angeles there was a spur or switch track connecting with other railroad tracks, upon which plaintiffs received freight consigned to them by rail. The building in which plaintiffs carried on their business was called the "Guasti building" and the spur track in the rear of the building was called the "Guasti switch     Plaintiffs had caused a sign to be placed in the rear of the building adjacent to this switch, reading "Place cars here." The car-

load of potatoes in question arrived in Los Angeles on the morning of Saturday, December 22, 1906, and defendant telephoned that fact to plaintiffs' receiving clerk, who requested that the car be placed on the switch track in the rear of plaintiffs' place of business. Defendant complied with this request and so placed the car on the same day at an hour after plaintiffs had ceased doing business for that day. On the following day, Sunday, December 23, 1906, the place of business of plaintiffs was destroyed by fire, and the same fire destroyed the carload of potatoes. Plaintiffs sue defendant for the value of the potatoes so destroyed and rest their right of recovery upon the common law liability of a carrier to safely carry and deliver the consigned goods to the consignee. The judgment was rendered upon a verdict directed by the trial judge upon the completion of plaintiffs' proofs, on the motion of defendant, without its offering any evidence in refutation of the case made by plaintiffs. The evidence of plaintiffs establishes the fact that the switch upon which defendant placed the carload of potatoes in question was the usual and customary place where plaintiffs received their consignments of freight in cars. It is, however, contended by plaintiffs that it was defendant's duty to give plaintiffs reasonable notice of delivery, so that they might take the potatoes into their possession, and that such notice not having been given, defendant's liability as such carrier was not discharged at the time of the destruction of the potatoes by fire.

We do not think that these contentions of plaintiffs are well taken, but on the contrary that the conclusion of the trial judge was in accord with legal precedent applicable to the rights and obligations of the parties. Under the evidence in this record there was, under the well settled doctrine of this state, a complete delivery of the potatoes by the carrier when it placed the car containing them upon the "Guasti switch." When that had been done defendant's duty as carrier ceased.

While it is true that notice to the consignee of the arrival of the goods by the carrier in this jurisdiction is not essential to discharge the carrier from its common law liability as such, still it is patent from the evidence that defendant not

only gave notice of the arrival of the potatoes, but delivered them in compliance with the instructions and request of plaintiffs' receiving clerk, given at the time such notice was received. Upon such delivery it became the duty of plaintiffs to receive and care for the potatoes. Closing their place of business did not operate to continue the liability of defendant after delivery in accord with instructions given. Plaintiffs' counsel quote from Gregg v. I. C. R. R. Co., 147 Ill. 551, as follows: "In all such cases the question to be determined is whether anything remains to be done by the carrier in completion of the contract to carry safely and deliver the goods at the place of destination. If there is, the liability as carrier continues." By parity of reasoning, if nothing remains for the carrier to do, as in this case, delivery having been accomplished, then the liability of the carrier ends. When properly analyzed there is nothing in the many other cases cited by counsel for plaintiffs out of harmony with this holding. There is no contention, as we understand the evidence or gather from the argument of counsel, that it was incumbent upon defendant in any circumstances to do more than it did when it put the car upon the "Guasti switch," as directed by plaintiffs' shipping clerk. It was no part of defendant's duty to unload the car or remove the potatoes from it or put them in any other place. But for the fire occurring, which destroyed them, it is obvious plaintiffs would have made no further requests of defendant in relation to the potatoes, and as no further duty rested upon defendant after delivery, the misfortune which resulted in their destruction by fire could not have the effect of imposing a liability where none before existed. In the case of Porter v. Chicago, R. I. & P. R. R. Co., 20 Ill. 408, the earliest pronunciamento on this subject by that court, it said: "It has been held, and we think with reason, 'that the cases have settled the question that carriers by railway are neither bound to deliver to the consignee personally or to give notice of the arrival of goods to discharge the liabilities of common carrier.' Redfield on Railways, 251." The doctrine thus announced was approved and again ap-

plied in C. & A. v. Scott, 42 *ib.* 132. In a case where household goods arrived on the evening preceding the great Chisago Fire of 1871, too late for delivery, and were stored by the carrier in a warehouse and destroyed in that disaster, the court said in M. D. T. Co. v. Hallock, 64 *ib.* 284: "Whatever other courts may have decided on this question, it is the settled doctrine of this court that the liability of a common carrier terminates with the delivery of the goods in a safe warehouse, and notice is not required to be given to the consignee." Other cases sustaining this doctrine are: I. C. R. R. Co. v. Friend, 64 *ib.* 303; Anchor Line v. Knowles, 66 *ib.* 150; Rothschild v. Mich. C. R. R. Co., 69 *ib.* 164. In the case of Cahn v. M. C. R. R. Co., 71 *ib.* 96, the court, recognizing that other courts had held to a contrary doctrine, said: "We are perfectly well aware that the rule heretofore laid down and thus far adhered to by this court upon this subject is not in harmony with the views of the courts in many of the other states, and as contended for by some respectable law writers. As was shown in Hallock's case, it was however adopted many years since. After an examination of many authorities and mature consideration by the Court, we do not conceive that it would be wise or prudent to now change it." With a consistency born of a conviction of right, the doctrine is still adhered to by our Supreme Court and given effect in the subsequent cases of I. C. R. R. Co. v. Carter, 165 *ib.* 570; Gratiot Street Warehouse Co. v. St. Louis, A. & T. H. R. R. Co., 221 ib. 418; and this court applied the same principle in C. R. I. & P. Ry. Co. v. Kendall, 72 Ill. App. 105.

The other questions argued become unimportant in the light of the views above expressed, and being of the opinion that the judgment of the trial court does justice between the contending parties in accord with legal precedents obtaining in this jurisdiction, the judgment of the Municipal Court is affirmed.

*Affirmed.*