OLD WAYNE MUTUAL LIFE ASSOCIATION OF INDIANAPOLIS *v.* McDONOUGH.

ERROR TO THE SUPREME COURT OF THE STATE OF INDIANA.

No. 57. Argued October 25, 1906.—Decided January 7, 1907.

A statute of Pennsylvania provides: "No insurance company not of this State, nor its agents, shall do business in this State until it has filed with the Insurance Commissioner of this State a written stipulation, duly authenticated by the company, agreeing that any legal process affecting the company, served on the Insurance Commissioner, or the party designated by him, or the agent specified by the company to receive service of process for said company, shall have the same effect as if served personally on the company within this State, and if such company should cease to maintain such agent in this State so designated such process may thereafter be served on the Insurance Commissioner." An insurance company of Indiana issued a policy of insurance upon the life of a citizen of Pennsylvania, the beneficiaries being also citizens of that Commonwealth. The contract of insurance was made in Indiana without the insurance company having filed the stipulation required by

the local statute as to service of process upon the Insurance Commissioner of Pennsylvania. A suit was brought on the contract in a Pennsylvania court, process was served on the state Insurance Commissioner alone, a personal judgment taken against the insurance company, and suit brought on that judgment in an Indiana court. The company did · some business in Pennsylvania which had no relation to the contract made in Indiana. *Held*, that:

1. If the defendant had ·no such actual legal notice of the Pennsylvania suit as would bring it into court, or if it did not voluntarily appear therein by an authorized representative, then the Pennsylvania court was without jurisdiction to render a personal judgment ·against the company.

2. The constitutional requirement that full faith and credit be given in each State to the public acts, records and judicial proceedings of every other State is necessarily to be interpreted in connection with other provisions of the Constitution, and therefore no State can obtain in the tribunals of other jurisdictions full faith and credit for its judicial proceedings if they are wanting in the due process of law enjoined by the fundamental law.

3. If the conclusiveness of a judgment or decree in a court of one State is questioned in a court of another government, Federal or state, it is open, under proper averments, to inquire whether the court rendering the decree or judgment had jurisdiction to render it.

4. Where an insurance company or corporation of one State goes into another State to transact business in defiance of its statute as to service of process, it will, in an action against it in such State, be held to have assented to the terms prescribed by the local statute for service of process in respect to business done in that State, but its assent in that regard will not be' implied as to business not transacted in that State.

5. If a personal judgment be rendered in one State against a corporation of another State, bringing such corporation into court, that is, without any legal notice to the latter of the suit, and without its having appeared therein in person or by attorney or agent, it is void for want of due process of law.

164 Indiana, 321, reversed.

THE facts are stated in the opinion.

*Mr. A. S. Worthington* for plaintiff in error:

The Pennsylvania judgment is invalid, outside of that State at least, because it does not appear that when process was served on the insurance commissioner the plaintiff in error was doing business in Pennsylvania. *Barrow Steamship Co.* v. *Kane*, 170 U. S. 111; *St. Clair* v. *Cox*, 106 U. S. 350; *Fitzgerald*

*Co.* v. *Fitzgerald,* 137 U. S. 98, 106; *Mutual Life Ins. Co.* v. *Spratley,* 172 U. S. 602; *Goldey* v. *Morning News,* 156 U. S. 519.

Return of service upon an officer of a foreign corporation is insufficient unless it appears from the return or from the record that the company is doing business in the State when the suit is begun. *Central Grain & Stock Exch.* v. *Board of Trade,* 125 Fed. Rep. 467.

In the suit brought in Indiana on the Pennsylvania judgment it was averred in the complaint that the defendant is now and on December 3,. 1897, and long prior and subsequent thereto, was engaged in the transaction of business in Pennsylvania, soliciting applications for insurance from and issuing policies to residents of said State. This is one of the material allegations denied by paragraph 1 of the answer in the case. No evidence was offered to support this averment, and it would seem that on this account alone, the judgment below should be reversed, nor is sufficient evidence on this subject found in the transcript of the judgment in the Pennsylvania suit. While the plaintiff's statement of claim in the Pennsylvania court, which was filed when the original summons was issued, did indeed set forth that the policy sued on was executed and delivered at Scranton, Pennsylvania, this averment does not help the defendant in error. A single transaction does not constitute doing business in the State. *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727; *Ammons* v. *Brunswick-Balke Collender Co.,* 141 Fed. Rep. 570; *State* v. *Robb,* 106 N. W. Rep. 406; *Jameson* v. *Simonds Law Co.,* 84 Pac. Rep. 269.

The Pennsylvania judgment is invalid because the statute under which process was served on the insurance commissioner does not provide for any notice to the foreign corporation.

A State may exclude altogether a foreign corporation, or may, in general, allow it to do business within its territory upon such terms as it deems proper. *Bank of Augusta* v. *Earle,* 13 Pet. 519; *Paul* v. *Virginia,* 8 Wall. 168; *Railroad Co.* v. *Harris,* 12 Wall. 65; *Ex parte Schollenberger,* 96 U. S. 369.

A judgment rendered in a state court, without personal service on the defendant, may be a good judgment, even *in personam*, against such defendant in that State, but void everywhere else. *Goldey* v. *Morning News,* 156 U. S. 518; *Barrow Steamship Co.* v. *Kane,* 170 U. S. 111; *Grover* v. *Radcliffe,* 137 U. S. 287; *La Fayette Ins. Co.* v. *French,* 18 How. 406.

Due process of law requires notice and an opportunity to be heard. *Lasere* v. *Rochereau,* 17 Wall. 437; *Orchard* v. *Alexander,* 157 U. S. 372, 383; *McVeigh* v. *United States,* 11 Wall. 259.

The right of a State to determine the conditions upon which it will permit foreign corporations to carry on their business within its borders may be ffected by the Constitution of the United States. The power of the State in this regard is subject to such limitations on her sovereignty as may be found in the fundamental law of the Union. *Ducat* v. *Chicago,* 10 Wall. 410, 415.

A corporation lawfully doing business in a State is no more bound by a general unconstitutional statute than a citizen of the State. *Cargill Co.* v. *Minnesota,* 180 U. S. 452; *Carroll* v. *Greenwich Ins. Co.,* 199 U. S. 409.

While a foreign corporation must comply with state laws, invalid state laws, contrary to the Constitution of the United States, cannot be imposed as a condition upon the right of such a corporation to do business within the State. *Dayton Coal & Iron Co.* v. *Barton,* 183 U. S. 23.

The right of a State to allow foreign corporations to do business in the State on such terms as it pleases is "subject always of course to the paramount authority of the Constitution of the United States." *Hooper* v. *California,* 155 U. S. 648, 656. See also *Insurance Co.* v. *Morse,* 20 Wall. 445, 451, 455; *Doyle* v. *Continental Insurance Co.,* 94 U. S. 535; *Southern Pac. R. R. Co.* v. *Denton,* 146 U. S. 202; *Barron* v. *Burnside,* 121 U. S. 186; *Swan* v. *Mutual Reserve &c. Assn.,* 100 Fed. Rep. 922; *Pinney* v. *Providence Loan Co.,* 106 Wisconsin, 402; *Rothrock* v. *Insurance Co.,* 161 Massachussetts, 425; *Carroll* v. *N. Y., N.*

*H. & H. R. R. Co.,* 46 Atl. Rep. 708; *Wilson* v. *Seligman,* 144 U. S. 45; *Vallee* v. *Dumurgue,* 4 Exch. 290; *Copin* v. *Adamson,* 9 L. R. Exch. 345, affirmed on appeal, Exch. Div. 17.

There was no appearance or brief filed for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action in an Indiana court against the plaintiff in error upon a judgment against it in a Pennsylvania court. The decisive questions in the case have reference to the clause of the Constitution of the United States, requiring full faith and credit to be given in each State to the public acts, records and judicial proceedings of other States, and, also, to the clause forbidding the deprivation by a State of life, liberty or property, without due process of law. There was a judgment for the plaintiffs, which was affirmed by the Supreme Court of the State.

The questions before us arise out of the facts now to be stated.

On the twenty-second day of February, 1900, the defendants in error brought an action in the Court of Common Pleas of Susquehanna County, Pennsylvania, against the Old Wayne Mutual Life Association of Indianapolis, an Indiana corporation, upon a certificate or policy of life insurance dated December 3, 1897, whereby that association agreed to pay to Winnifred Herrity and Sarah McDonough of Scranton, Pennsylvania, or their legal representatives, the sum of $5,000 upon the condition, among others, that if the person whose life was insured—Patrick McNally, of Scranton, Pennsylvania—should die within one year from the date of the certificate, then Herrity and McDonough should not receive more than one-fourth of the above sum. McNally died on the fourteenth day of November, 1898.

A summons, addressed to the sheriff of Susquehanna County, Pennsylvania, was sued out and the following return thereof was made: "Served the Old Wayne Mutual Life Association

of Indianapolis, Indiana, an insurance company incorporated under the laws of the State of Indiana, by giving, September 26, 1900, a true and attested copy of the within writ to Israel W. Durham, Insurance Commissioner for the State of Pennsylvania, and making known to him the contents thereof, the said association having no attorney in the State of Pennsylvania upon whom service could be made." It does not appear, if the fact be material, that any notice of this summons was given by the Commissioner to the defendant.

Subsequently, the plaintiff filed a declaration or statement in the Pennsylvania case, which contained, among other things, the following: "That the said The Old Wayne Mutual Life Association of Indianapolis, Indiana, defendant, is a mutual life insurance association, foreign to the State of Pennsylvania, to-wit: of the State of Indiana, as aforesaid, and as such has been doing business of life insurance in the State of Pennsylvania, more particularly in the counties of Susquehanna and Lackawanna, in said State of Pennsylvania, issuing policies of life insurance to numerous and divers residents of said counties and State for many years, upon application therefor taken in said counties of Susquehanna and Lackawanna, and was transacting such business of life insurance in said State and counties on the third day of December, 1897, and before and since till July 5, 1900, and after. That the said The Old Wayne Mutual Life Association has no duly appointed agent in said county of Susquehanna, State of Pennsylvania, for the acceptance of service of process other than the Commissioner of Insurance of the State of Pennsylvania. The writ of summons in this action, duly issued by the Court of Common Pleas of Susquehanna County, directing the said defendant, The Old Wayne Mutual Life Association of Indianapolis, Indiana, to appear and answer, was legally and duly served on the Commissioner of Insurance, of the State of Pennsylvania on the twenty-sixth day of September, 1900, the said Commissioner of Insurance for the State of Pennsylvania being the proper person for service in this case."

This was followed by a notice in that case addressed to the Insurance Commissioner, and stating that judgment would be taken if no appearance was entered or an affidavit of defense filed by the association within fifteen days after service of that notice. At a later date, the Insurance Commissioner not having appeared, and no affidavit of defense having been filed, judgment was taken against the life association, by default, April 16, 1901.

The present action was brought on that judgment. The complaint in this case, filed June 21, 1900, alleged that the defendant association was on the third day of December, 1897, and long prior and subsequent thereto engaged in the transaction of business in Pennsylvania. After setting out the provisions of the statute of Pennsylvania (to be presently referred to), the issuing of the policy, the death of McNally, and the making of the requisite proofs of loss, the complaint alleged that process in the Pennsylvania case was served upon the Insurance Commissioner for Pennsylvania, "the said defendant having no other agent or attorney upon whom process could be served in said State of Pennsylvania."

The defendant demurred to the complaint as insufficient in law, but the demurrer was overruled. It then filed its answer, denying "each and every material allegation" in the complaint. In a separate paragraph it alleged that its only offices for the transaction of business were, and at all times had been, at Indianapolis, Indiana, where its officers had always resided; that it had never been admitted to do business in Pennsylvania, and never had an office or agency there for the transaction of business; that no one of its officers or agents was in that Commonwealth at the date of the alleged suit, nor had been there since; that no summons was ever served upon it at any time, and that it did not appear in that action; that no one ever appeared for it there who had authority to do so; and that the first notice or knowledge it ever had of the alleged judgment against it was long after the day when it appears to have been rendered.

The plaintiffs replied, denying each and every material allegation of the answer.

The plaintiff in error insists that the Pennsylvania court had no jurisdiction to proceed against it; consequently, the judgment it rendered was void for the want of the due process of law required by the Fourteenth Amendment. If the defendant had no such actual, legal notice of the Pennsylvania suit as would bring it into court, or if it did not voluntarily appear therein. by an authorized representative, then the Pennsylvania court was without jurisdiction, and the conclusion just stated would follow, even if the judgment would be deemed conclusive in the courts of that Commonwealth. The constitutional requirement that full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State is necessarily to be interpreted in connection with other provisions of the Constitution, and therefore no State can obtain in the tribunals of other jurisdictions full faith and credit for its judicial proceedings if they are wanting in the due process of law enjoined by the fundamental law. "No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party." *Scott* v. *McNeal*, 154 U. S. 34, 46. No State can, by any tribunal or representative, render nugatory a provision of the supreme law. And if the conclusiveness of a judgment or decree in a court of one State is questioned in a court of another government, Federal or state, it is open, under proper averments, to inquire whether the court rendering the decree or judgment had jurisdiction to render it.

Such is the settled doctrine of this court. In the leading case of *Thompson* v. *Whitman*, 18 Wall. 457, 468, the whole question was fully examined in the light of the authorities. Mr. Justice Bradley, speaking for the court and delivering its unanimous judgment, stated the conclusion to be clear that the jurisdiction of a court rendering judgment in one State may be questioned in a collateral proceeding in another State,

notwithstanding the averments in the record of the judgment itself. The court, among other things, said that if it be once conceded that "the validity of a judgment may be attacked collaterally by evidence showing that the court had no jurisdiction, it is not perceived how any allegation contained in the record itself, however strongly made, can affect the right so to question it. The very object of the evidence is to invalidate the paper as a record. If that can be successfully done no statements contained therein have any force. If any such statements could be used to prevent inquiry, a slight form of words might always be adopted so as effectually to nullify the right of such inquiry. Recitals of this kind must be regarded like asseverations of good faith in a deed, which avail nothing if the instrument is shown to be fraudulent." This decision was in harmony with previous decisions. Chief Justice Marshall had long before observed in *Rose* v. *Himely*, 4 Cranch, 241, 269, that upon principle the operation of every judgment must depend on the power of the court to render that judgment. In *Williamson* v. *Berry*, 8 How. 495, 540, it was said to be well settled that the jurisdiction of any court exercising authority over a subject "may be inquired into in every other court when the proceedings in the former are relied upon, and brought before the latter, by a party claiming the benefit of such proceedings," and that the rule prevails whether "the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of States." In his Commentaries on the Constitution, Story, referring to *Mills* v. *Duryee*, 7 Cranch, 481, 484, and to the constitutional requirement as to the faith and credit to be given to the records and judicial proceedings of a State, said: "But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given, to pronounce it; or the right of the State itself to exercise authority over the person or the subject-matter. The Con-

stitution did not mean to confer [upon the States] a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within their territory." In the later case of *Galpin* v. *Page*, 18 Wall. 350, 365, 366—decided after, but at the same term as, *Thompson* v. *Whitman*—the court, after referring to the general rule as to the presumptions of jurisdiction in superior courts of general jurisdiction, said that such presumptions "only arise with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred." In the same case: "It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant, until he has been duly cited to appear, *and has been afforded an opportunity to be heard.* Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and can never be upheld where justice is justly administered."

The question of the jurisdiction of the Pennsylvania court being then open, on this record, let us see what presumptions arise from the showing made by it.

The complaint in this case, as we have seen, alleged that on the third day of December, 1897,—the date of the insurance certificate—as well as prior and subsequent thereto, the defendant association engaged in business in Pennsylvania, soliciting applications for insurance and issuing policies to residents of that Commonwealth. The answer denied each and every material allegation in the complaint, and such a

denial under the Indiana Code of Civil Procedure was sufficient to put the plaintiffs upon proof of every fact that was essential in establishing their cause of action. Thornton's Indiana Code, art. 10, § 47; Title Pleadings; Rev. Stat. § 914.

The burden of proof was therefore upon the plaintiffs to show by what authority the Pennsylvania court could legally enter a personal judgment against a corporation which, according to the complaint itself, was a corporation of another State and was not alleged to have appeared in person or by an attorney of its own selection or to have been personally served with process. This burden the plaintiffs met by introducing in evidence a complete transcript of the record of the action in the Pennsylvania court from which it appeared: 1. That the defendant association was sued in the Pennsylvania court as a life insurance association of Indiana, was alleged to have been engaged in business in Pennsylvania, and was so engaged before and after the certificate of insurance in question was issued. 2. That the summons in that action was served on the Commissioner of Insurance for Pennsylvania, the defendant association not having appointed an agent in that Commonwealth upon whom process could be served nor having appeared by an attorney or representative. 3. That the Insurance Commissioner not having appeared in the action, judgment was taken against the defendant; and that is the judgment here in suit.

It was further made to appear in the present action that when the contract of insurance was executed, as well as before and since, it was provided by a statute of Pennsylvania, approved June 20, 1883, P. L. 134, amendatory of a previous statute of that Commonwealth establishing an Insurance Department, as follows: "No insurance company, not of this State, nor its agents, shall do business *in this State* until it has filed with the Insurance Commissioner of this State a written stipulation, duly authenticated by the company, agreeing that any legal process affecting the company served on the Insurance Commissioner, or the party designated by

him, or the agent specified by the company to receive service of process for said company, shall have the same effect as if served personally on the company within this State, and if such company should cease to maintain such agent in this State so designated, such process may thereafter be served on the Insurance Commissioner; but so long as any liability of the stipulating company to any resident of this State continues, such stipulation cannot be revoked or modified, except that a new one may be substituted, so as to require or dispense with the service at the office of said company within this State, and that such service of process according to this stipulation shall be sufficient personal service on the company. The term process shall be construed to mean and include any and every writ, rule, order, notice or decree, including any process of execution that may issue in or upon any action, suit or legal proceeding to which said company may be a party by themselves, or jointly with others, whether the same shall arise upon a policy of insurance or otherwise, by or in any other court of this Commonwealth having jurisdiction of the subject matter in controversy, . . . and in default of an agent appointed by the company as aforesaid, then the officer so charged with the service of said process, shall, in like manner, deputize the sheriff, constable or other officer aforesaid of the county where the agent, if any there be, named by the Insurance Commissioner, may reside, to serve the same on him; and in default of such agent named by the Insurance Commissioner, as aforesaid, then in like manner to deputize the sheriff, constable or other officer as aforesaid of the county where the office of the Insurance Commissioner may be located, to serve the same on him; and each and every service so made, shall have the same force and effect to all intents and purposes as personal service on said company, in the county where said process issued; . . ."

The defendant association introduced no evidence. If looking alone at the pleadings in the Pennsylvania suit it be taken that at the time of the contract in question the

Indiana corporation was engaged in transacting, at least, *some* business in Pennsylvania, without having complied with the provisions of the above statute of that Commonwealth— that is, without having filed with the Insurance Commissioner the written stipulation required by that statute—still, plaintiffs cannot claim, on the present record, the full benefit of the general rule that the judgment of a court of superior authority, when proceeding within the general scope of its powers, is presumed to act rightly within its jurisdiction; that nothing shall be "intended to be out of the jurisdiction of a superior court but that which specially appears to be so." *Peacock* v. *Bell*, 1 Saunders, 73, 74. When a judgment of a court of superior authority is attacked collaterally for the want of jurisdiction, such a presumption cannot be indulged when it affirmatively appears from the pleadings or evidence that jurisdiction was wanting. We make this observation in view of the fact, distinctly shown by the plaintiffs themselves, that the policy of insurance and contract in question was, in fact, executed in Indiana and not in Pennsylvania. The policy sued on provided as one of its conditions that "for all purposes and in all cases this contract shall be deemed to have been made at the special office of this association in the State of Indiana, U. S. A., and all benefits and claims thereunder shall be payable at such office." Besides, to the complaint or petition in the Pennsylvania court was appended the following memorandum signed by the attorney for the plaintiffs: "The above contract of insurance is governed by the laws of the State of Indiana, the contract having been entered into at Indianapolis." And when the suit was brought in Pennsylvania the plaintiffs were confronted with the condition in the policy that "it is expressly understood and agreed that no action shall be maintained nor recovery had for any claims under or in virtue of this policy, after the lapse of six months from the death of said member," McNally. More than six months had elapsed after McNally's death before the suit was instituted in Pennsylvania. In order to obviate this difficulty the plaintiffs in

their declaration or statement in assumpsit, in the Pennsylvania court, alleged that the contract of insurance was governed by the laws of Indiana, "the contract having been entered into at Indianapolis, Indiana;" also, that "said policy of insurance and the contract touching the issuing the same were executed in the State of Indiana, in which State all provisions limiting liability on policies where suit is not brought within a certain time are held void and of no account." The plaintiffs cannot, therefore, be heard now to say that the contract was not, in fact, made in Indiana. What they alleged in the Pennsylvania suit precluded the idea that the contract of insurance was made in that Commonwealth. Indeed, if they had alleged that the business was transacted in Pennsylvania their action on the contract would have been defeated by the condition in the policy that no suit thereon could be brought on it after the expiration of six months from the death of the person whose life was insured.

But even if it be assumed that the insurance company was engaged in *some* business in Pennsylvania at the time the contract in question was made, it cannot be held that the company agreed that service of process upon the Insurance Commissioner of that Commonwealth would alone be sufficient to bring it into court in respect of *all* business transacted by it, no matter where, with or for the benefit of citizens of Pennsylvania. Undoubtedly, it was competent for Pennsylvania to declare that no insurance corporation should transact business within its limits without filing the written stipulation specified in its statute. *Lafayette Ins. Co.* v. *French,* 18 How. 404; *Paul* v. *Virginia,* 8 Wall. 168; *Hooper* v. *California,* 155 U. S. 648, 653, and authorities cited; *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28, 45. It is equally true that if an insurance corporation of another State transacts business in Pennsylvania without complying with its provisions it will be deemed to have assented to any valid terms prescribed by that Commonwealth as a condition of its right to do business there; and it will be estopped to say that it had not done what it should

have done in order that it might lawfully enter that Commonwealth and there exert its corporate powers. In *Railroad Company* v. *Harris*, 12 Wall. 65, 81, the question was as to the jurisdiction of the Supreme Court of the District of Columbia of a suit against a corporation in Maryland, whose railroad entered the District with the consent of Congress. This court said: "It (the corporation) cannot migrate, but may exercise its authority in a foreign territory upon such conditions as may be prescribed by the law of the place. One of these conditions may be that it shall consent to be sued there. If it does business there it will be presumed to have assented and will be bound accordingly." This language was cited and approved in *Railway Company* v. *Whitton*, 13 Wall. 270, 285. The same question was before the court in *Ex parte Schollenberger*, 96 U. S. 369, 376, and the principle announced in the *Harris* and *Whitton* cases was approved. In the *Schollenberger case* the Pennsylvania statute here in question was involved. To the same effect are the following cases: *Ehrman* v. *Teutonia Ins. Co.*, 1 McCrary, 123, 129; *Knapp, Stout & Co.* v. *Nat. Mut. Fire Ins. Co.*, 30 Fed. Rep. 607; *Berry* v. *Knights Templars' & Masons' Life Indemnity Co.*, 46 Fed. Rep. 439, 441, 442; *Diamond Plate Glass Co.* v. *Minneapolis Mut. Fire Ins. Co.*, 55 Fed. Rep. 27; *Stewart* v. *Harmon*, 98 Fed. Rep. 190, 192.

Conceding then that by going into Pennsylvania, without first complying with its statute, the defendant association may be held to have assented to the service upon the Insurance Commissioner of process in a suit brought against it there in respect of business transacted by it in that Commonwealth, such assent cannot properly be implied where it affirmatively appears, as it does here, that the business was not transacted in Pennsylvania. Indeed, the Pennsylvania statute, upon its face, is only directed against insurance companies who do business in that Commonwealth—"in this State." While the highest considerations of public policy demand that an insurance corporation, entering a State in defiance of a statute

which lawfully prescribes the terms upon which it may exert its powers there, should be held to have assented to such terms as to business there transacted by it, it would be going very far to imply, and we do not imply, such assent as to business transacted in another State, although citizens of the former State may be interested in such business.

As the suit in the Pennsylvania court was upon a contract executed in Indiana; as the personal judgment in that court against the Indiana corporation was only upon notice to the Insurance Commissioner, without any legal notice to the defendant association and without its having appeared in person, or by attorney or by agent in the suit; and as the act of the Pennsylvania court in rendering the judgment must be deemed that of the State within the meaning of the Fourteenth Amendment,[1] we hold that the judgment in Pennsylvania was not entitled to the faith and credit which by the Constitution is required to be given to the public acts, records and judicial proceedings of the several States, and was void as wanting in due process of law.

The judgment of the Supreme Court of Indiana must, therefore, be reversed, with directions for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[1] *Ex parte Virginia,* 100 U. S. 339, 346, 347; *Neal* v. *Delaware,* 103 U. S. 370; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Gibson* v. *Mississippi,* 162 U. S. 565; *Chicago, Burlington &c. R. R.* v. *Chicago,* 166 U. S. 226, 233, 234.